E. Jose Trejo
NORTHWEST JUSTICE PROJECT
1702 W. Broadway Ave.
Spokane, WA 99201
(509) 324-9128
(509) 324-0065 (fax)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAVID HAM, CYNTHIA HAM-SANCHEZ and their marital community, and MICHAEL HAM,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF SPOKANE,<br><br>Defendant. | NO.<br><br>COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND MONETARY DAMAGES<br><br>JURY TRIAL DEMANDED |

Plaintiffs David Ham, Cynthia Ham, and Michael Ham ("Plaintiffs"), allege as follows:

## I.    INTRODUCTION

Plaintiffs are a married couple and their adult son, all of whom were homeless in Spokane, WA in 2018. From approximately November 24 through December 09, 2018, Plaintiffs lived in tents in front of Spokane City Hall as part of "Camp Hope". Camp Hope was, in part, a protest of the City of Spokane's lack of shelter space for the homeless; however, it was also a result of homeless individuals having no other place to go. On December 09, 2018, Defendant, City of Spokane ("Spokane" or "City") cleared all of the tents used as housing by residents of Camp Hope, throwing away all tents and the personal possessions they contained into a garbage truck. The City made no attempt to retain items of value, to store the property, or

Complaint- 1

in any way preserve the property. The residents of Camp Hope, who attempted to retrieve their belongings after the City began to clear the encampment, were threatened with arrest.

The Defendant's seizure and destruction of Plaintiffs' property, was an illegal taking of private property. The City failed to maintain the property of the Plaintiffs, and failed to give the Plaintiffs the opportunity to retrieve their property. The practice and conduct of the City in disposing of Plaintiffs' personal property—when there was a less intrusive means available—was an unreasonable seizure, and violated the Plaintiffs' constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the U.S. Constitution. The Plaintiffs have each suffered loss due to the City's illegal taking and destruction of their property.

The practice and conduct of the City in threatening to arrest Plaintiffs simply for existing—when they had no other place to go—violated the Plaintiffs' constitutional rights to be free from cruel and unusual punishment as guaranteed by the Eighth and Fourteenth Amendments to the U.S. Constitution.

Plaintiffs seek equitable relief and damages pursuant to 42 U.S.C. §1983.

## II.    PARTIES

1. Plaintiff, David Ham, is resident of Spokane, WA and was homeless during the period of time relevant to this action. He is married to Plaintiff Cynthia Ham-Sanchez and is the father of Plaintiff Michael Ham.

2. Plaintiff Cynthia Ham-Sanchez is a resident of Spokane, WA, and was homeless during the period of time relevant to this action. She is married to Plaintiff David Ham and the mother of Plaintiff Michael Ham.

Complaint- 2

3. Plaintiff Michael Ham is a resident of Spokane, WA and was homeless during the period of time relevant to this action. He is the adult son of Plaintiffs David Ham and Cynthia Ham-Sanchez.

4. Defendant, City of Spokane (hereinafter "City") is a municipal corporation organized under the state laws of Washington. The City is the legal and political governmental entity responsible for the actions of the Spokane Police Department, its officials, agents, and employees.

### III. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. §§1331, 1343(a)(3) and (4), and 1367. Plaintiffs bring this action under 42 U.S.C. § 1983, to vindicate rights established by the Eighth and Fourteenth Amendments of the United States Constitution. Plaintiffs also seek relief under the Declaratory Judgement Act, 28 U.S.C. §§ 2201, and 2202.

6. Venue in this action is proper in the District of Eastern Washington under 28 U.S.C. §1391(b), as the Defendant is located in the District of Eastern Washington and all events and/or omissions giving rise to the claims complained of herein, have occurred or will occur, in this district.

### IV. OPERATIVE FACTS

**A. The City's Failure to Provide Essential Emergency Housing Services.**

7. Up until September 2018, House of Charity, a homeless shelter located in Spokane, WA, provided 24/7 shelter space under contract with the City.

8. In the summer of 2018, the City notified House of Charity that it would no longer be funded to provide 24/7 shelter space to the houseless population.

9. This caused the loss of hundreds of shelter spaces in the City of Spokane.

Complaint- 3

Northwest Justice Project
1702 W. Broadway Avenue
Spokane, WA 99201
(509) 324-9128 phone
(509) 324-0065 fax

10. The City of Spokane failed to make appropriate accommodations for the homeless population.

11. On December 1, 2018, the City opened a "Warming Center" at 527 South Cannon Street (Cannon street warming center).

12. The Cannon street warming center was for Adult men and women, no pets or children were permitted.

13. The Cannon Street warming center was operable from 7:00 p.m. until 7:00 a.m. and had a capacity of forty (40) people.

14. On December 8, 2018, the City opened a second warming center at Salem Lutheran Church (Salem Warming Center).

15. The Salem Warming Center was for adult men and women.

16. The Salem Warming Center was operable from 9:00 p.m. until 7:00 a.m. and had a capacity of sixty (60) people.

17. The warming centers were not homeless shelters.

18. The warming sites did not provide any place to stay, or to store personal possessions during the day.

19. The majority of the shelters within the City that were operating at this time were not open 24 hours per day.

20. Homeless shelters are a type of homeless service agency that provide temporary residence for homeless individuals and families. Shelters exist to provide residents with safety and protection from exposure to the weather, while simultaneously reducing the environmental impact on the community.

Complaint- 4

**Northwest Justice Project**
1702 W. Broadway Avenue
Spokane, WA 99201
(509) 324-9128 phone
(509) 324-0065 fax

21. The House of Charities 24/7 Homeless Shelter that closed in the summer of 2018, was an example of a "Homeless Shelter"

22. A warming center is a short-term emergency shelter that operates when temperatures, or a combination of precipitation, wind-chill, wind and temperature, become dangerously inclement.

23. Their paramount purpose is the prevention of death and injury from exposure to the elements. Therefore, the temporary warming centers did not qualify as shelters under the code.

24. Even in the event that the warming centers met the definition of a shelter under the statute, there were no warming shelters open at the time that Plaintiffs' property was seized and destroyed by the Defendant.

25. The inability of a homeless individual to stay at the warming centers during the day, or leave their personal possessions at the warming centers, prevent them from being defined as "homeless shelters."

26. It is difficult for a homeless person to move the entirety of their personal possessions from one place to another during the day.

27. Significant snowfall and the frigid temperatures (which trigger the opening of warming centers) further complicate movement during a Spokane winter.

**B.    The City Harassed People Who Attempted to Camp.**

28. Spokane Municipal code criminalizes, "camping" anywhere within the city limits. SPOKANE, WA., CODE § 12.02.1002 (A), (B) (2018) states:

> A. "Camp" or "camping" shall mean residing on or using public property for living accommodation purposes, as exemplified by remaining for prolonged or repetitious periods of time not associated with ordinary use of such public property with one's

Complaint- 5

Northwest Justice Project
1702 W. Broadway Avenue
Spokane, WA 99201
(509) 324-9128 phone
(509) 324-0065 fax

> personal possessions (including but not limited to clothing, sleeping bags, bedrolls, blankets, sheets, cots, tarpaulins, hammocks, luggage, backpacks, kitchen utensils, cookware, or similar material), sleeping or making preparations to sleep, storing personal belongings as above defined, regularly cooking or consuming meals. This ordinance will not be enforced if there is no available shelter space for the individual/s engaging in otherwise prohibited camping conduct.
> B. "Public property" shall mean any property including but not limited to parks, riverbanks, waterways, conservation areas, natural areas, rights of way, easements, buildings, bridges, or other land or physical structures owned or managed by the City or other governmental agency.

SPOKANE, WA., CODE § 12.02.1002 (A), (B) (2018).

29. SPOKANE, WA., CODE § 12.02.1010 (2018) Unauthorized Camping on Public Property – Violation states:

> A. No person may camp in or upon any public property including, but not limited to, conservation lands and natural areas abutting the Spokane River and its tributaries unless specifically authorized by declaration of the Mayor in emergency circumstances.
> B. A violation of this section is a misdemeanor.
> C. Unless otherwise subject to custodial arrest under RCW 10.31.100, individuals subject to enforcement under this section shall be cited and released rather than being booked into jail.
> D. With the exception of those who do not meet the criteria for acceptance into community court, individuals subject to enforcement under this chapter shall be directed to community court by officer referral.

SPOKANE, WA., CODE § 12.02.1010 (2018).

30. Defendant has a policy of enforcing SPOKANE, WA., CODE § 12.02.1002 (2018) (the "Ordinance") broadly.

31. This Ordinance, defines camping as, "residing on or using public property for living accommodation purposes by remaining for prolonged or repetitious periods of time not associated with ordinary use of such public property with one's personal possessions." SPOKANE, WA., CODE § 12.02.1002 (A) (2018).

Complaint- 6

32.    This amounts to a ban on sleeping, lying down, or sitting–basic necessities of life.

**C.    Effect of Enforcement.**

33.    Plaintiffs David Ham, Cynthia Ham-Sanchez, and Michael Ham were forced to live outside during the relevant months of November and December.

34.    On or about November 20, 2018, Plaintiffs lived at a homeless encampment located adjacent to the Spokane City Hall at 808 W. Spokane Falls Blvd, Spokane, WA and continued to live there through December 09, 2018.

35.    The encampment, collectively known as, "Camp Hope" was located in front of Spokane City Hall in protest of policies by the City of Spokane that negatively affect the homeless population.

36.    Mr. David Ham's tent and all of his personal belongings were located within the Camp Hope encampment.

37.    Ms. Cynthia Sanchez-Ham's tent and all of her personal belongings were located within the Camp Hope encampment.

38.    Mr. Michael Ham's tent and all of his personal belongings were located within the Camp Hope encampment.

39.    On November 24, 2018, the City posted a notice to remove property on Plaintiffs' tents.

40.    This notice stated that the property owner had a right to request a pre-deprivation hearing, and that all items of obvious value would be stored.

41.    On December 06, 2018, the City posted the same notice to remove property on the tents.

42.    The notice required that all items be removed by December 08, 2018.

Complaint- 7

Northwest Justice Project
1702 W. Broadway Avenue
Spokane, WA 99201
(509) 324-9128 phone
(509) 324-0065 fax

43. On December 06, 2018, Mr. Ham's wife and adult son were both hospitalized with health issues.

44. The posting of these notices stating that the City intended to clear away Camp Hope were a proximate cause of these health concerns.

45. As a result, Plaintiff David Ham became responsible for all three of the family tents left at Camp Hope, and the personal possessions left within.

46. On December 06, 2018, Plaintiffs Cynthia Sanchez-Ham and Michael Ham both instructed Plaintiff David Ham to care for their tent and personal possessions while they were hospitalized.

47. On December 07, 2018, the City held a series of pre-deprivation hearings.

48. The City of Spokane police officer tasked with clearing the encampment, Captain Singley, was the hearing officer.

49. Captain Singley upheld the decision to continue with removal in every case.

50. On December 08, 2018, many members of the community, including a member of the city council, arrived at Camp Hope to express their support for the individuals who were part of the encampment.

51. No action was taken by Defendant to remove any property from Camp Hope when the 48-hour time period stated in the notices expired on December 08, 2018.

52. On the morning of December 09, 2018, at approximately 9:00 am, Plaintiff David Ham went to get breakfast.

53. Approximately 90 minutes later, when Plaintiff David Ham returned from breakfast, his tent and all his belonging had been taken.

54. The tents and all personal property of Plaintiffs Cynthia Ham-Sanchez and

Complaint- 8

**Northwest Justice Project**
1702 W. Broadway Avenue
Spokane, WA 99201
(509) 324-9128 phone
(509) 324-0065 fax

Michael Ham also had been taken.

55. The City used a prison work crew to take the Plaintiffs' possessions and throw them into a garbage truck.

56. Neither, SPOKANE, WA., CODE § 12.02.1002 (2018) or SPOKANE, WA., CODE § 12.02.1010 (2018), authorize the seizure or removal of property from encampments, or anywhere else.

57. The Notice to Remove Property the City uses, states items of obvious value, that clearly identify the owner, will be stored for safekeeping by the Spokane Police Department Property/Evidence Facility.

58. The City destroyed all property that it seized.

59. The City does not have any policy, procedure, or resources devoted to the storage of any property seized from homeless encampments.

60. SPOKANE, WA., CODE § 12.02.1002 (2018), specifically states the City will not enforce the ordinance if there is no available shelter space for the individual/s engaging in otherwise prohibited camping conduct.

61. SPOKANE, WA., CODE § 12.02.1002 (2018), does not define "Shelter Space".

62. Threats of citation or convictions under these "Ordinances" for camping in public can have a detrimental effect on an individual's health and his or her ability to find, and continue employment, procure and maintain housing, and receive government benefits.

63. Defendant's actions pose a health risk to the homeless populations of Spokane as the constant need to avoid citations or court referrals under these ordinances prevent individuals from sleeping.

64. Sleep is a physical necessity for people to function properly.

Northwest Justice Project
1702 W. Broadway Avenue
Spokane, WA 99201
(509) 324-9128 phone
(509) 324-0065 fax

65. Lack of sleep causes disruptions in cognitive function and exacerbates a myriad of physical and mental health problems.

66. Homeless individuals typically cannot afford to pay the fines associated with these ordinances.

67. These individuals often do not have a permanent address of telephone, especially when there is no homeless shelter available in the community to provide them.

68. This makes it difficult for them to receive communications from the court, such as Notices to Appear.

69. Homeless people often lack reliable transportation.

70. If a homeless person fails to appear, they will receive additional penalties.

71. SPOKANE, WA., CODE § 12.02.1010 (D) (2018) states, "With the exception of those who do not meet the criteria for acceptance into community court, individuals subject to enforcement under this chapter shall be directed to community court by officer referral."

72. The Community Court in the City of Spokane is limited to arrests that are made in a particular geographic area of the City that is only a fraction of the whole City.

73. If homeless defendants are not eligible for a referral to Community Court, they may be subject to additional penalties and incarcerations, which only worsen the situation.

74. Incarceration is disruptive and expensive, and periods of incarceration interrupt employment and social security benefits.

75. Homeless individuals must disclose criminal convictions, even for misdemeanors, on applications for public housing.

76. These convictions become a matter of public record.

77. As a result, these convictions may cause them to lose the opportunity to obtain

Complaint- 10

Northwest Justice Project
1702 W. Broadway Avenue
Spokane, WA 99201
(509) 324-9128 phone
(509) 324-0065 fax

permanent public, and private housing.

78. Individuals may lose an opportunity for housing if they are incarcerated.

79. Incarceration also interferes with Social Security benefits, which may not be received during periods of incarceration.

80. Individuals must also disclose criminal convictions when they apply for employment.

81. Even misdemeanor charges may reduce the chance that an employer will hire an applicant.

82. Missing work due to required court appearances, and periods of incarceration, may also lead to loss of employment and income.

83. Defendant's policy, custom, and practice of issuing citations to, arresting, and harassing homeless individuals such as the Plaintiffs under these Ordinances have the effect of criminalizing homelessness.

84. These measures do not accomplish any significant or legitimate public policy goals. Instead, they perpetuate the cycle of homelessness by decreasing opportunities for homeless individuals to find housing, gainful employment, and the ability to take care of their health needs.

85. The criminalization of homelessness deprives homeless individuals of their right to basic existence even if there is no arrest. The mere threat of arrest, weather written, verbal, or implied, by an authorized agent of the City, has the effect of punishing the homeless individual for their status.

**D.    Availability of Shelter**

86. At the time of day that the Plaintiffs' property was seized, there was no available

Complaint- 11

Northwest Justice Project
1702 W. Broadway Avenue
Spokane, WA 99201
(509) 324-9128 phone
(509) 324-0065 fax

shelter beds.

87. While there were a number of warming centers that had just opened up during the preceding week, they were closed on the morning of December 09, 2019, at 9:00 am.

88. 42 U.S. Code § 11302, defines a "Homeless Individual" to include one who lacks a fixed, regular and adequate nighttime residence, or one who resides in a shelter, transitional housing, or a place not ordinarily used for sleeping accommodations.

89. The available shelter space in Spokane does not allow the property to be stored during the day.

## V.    CAUSES OF ACTION

### First Cause of Action
### Violation of 42.U.S.C. 1983 (Fourth and Fourteenth Amendments)

90. Plaintiffs reassert and re-allege the allegations set forth above.

91. Forces beyond Plaintiffs' control, such as unemployment, poverty and the failure of Defendant to provide alternatives, including but not limited to, those which may be mandated by law, have compelled Plaintiffs and other similarly situated homeless people to live, eat, sleep and store their few personal belongings in public.

92. Plaintiffs have a protected property interest in their personal belongings.

93. Defendant has failed to provide Plaintiffs with procedural due process. Specifically, Defendant's pre-deprivation hearing is a sham that had no possibility of allowing Plaintiffs to remain on the property, or to store their belongings there.

94. Further, Defendant's post-deprivation procedures are inadequate because the Defendant's practices are to destroy any seized property and Defendant has no place to store seized belongings.

Complaint- 12

Northwest Justice Project
1702 W. Broadway Avenue
Spokane, WA 99201
(509) 324-9128 phone
(509) 324-0065 fax

95. Under color of state law, the Defendant has a custom and practice of failing to timely provide for post-deprivation due process, including a meaningful and adequate hearing capable of restoring the Plaintiffs' property, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

96. Defendant's above-described customs, policies, practices and conduct of confiscating and destroying Plaintiffs' personal property without warrant, probable cause, due process, exigent circumstances, and when there are less obtrusive and destructive alternatives available, violated the Plaintiffs' well established rights under the Fourth Amendment to the United States Constitution, as incorporated in, and applied to the States through the Fourteenth Amendment.

**Second Cause of Action**
**Violation of 42.U.S.C. 1983 (Eighth and Fourteenth Amendments)**

97. Plaintiffs reassert and re-allege the allegations set forth above.

98. Poverty, skyrocketing Spokane area rents, health issues, and the City's failure to provide adequate public safety and shelter space forced the Plaintiffs and other homeless individuals to sleep in public places in Spokane.

99. SPOKANE, WA., CODE § 12.02.1002(A) (2018) states, " This ordinance will not be enforced if there is no available shelter space for the individual/s engaging in otherwise prohibited camping conduct."

100. From November 23 until December 06, 2018, there was inadequate shelter space to house any of the Plaintiffs.

101. The notice that was placed on tents at Camp Hope on December 06, 2018, stating that all tents and property at Camp Hope were subject to removal after 48 hours caused extreme mental anguish for Plaintiffs Cynthia Sanchez-Ham and Michael Ham, resulting in, or

Complaint- 13

Northwest Justice Project
1702 W. Broadway Avenue
Spokane, WA 99201
(509) 324-9128 phone
(509) 324-0065 fax

contributing to their hospitalization later that day.

102. At approximately 10 am Sunday, December 09, 2018, when Plaintiffs' personal property were seized and destroyed by Defendant, no shelter space of any kind was available to Plaintiff David Ham.

103. Plaintiffs were homeless and had no way to comply with SPOKANE, WA., CODE § 12.02.1010 (2018) because they had to sleep outdoors.  Plaintiffs were threatened with arrest under this Ordinance, which makes it a misdemeanor to camp within the city of Spokane. Defendant's actions that penalized Plaintiffs for their homeless status constituted cruel and unusual punishment and violated the Plaintiffs' well-established rights under the Eighth Amendment to the United States Constitution as incorporated in, and applied to the states through the Fourteenth Amendment.

### Third Cause of Action
### Conversion

104. Plaintiff reassert and re-allege the allegations set forth above.

105. Plaintiffs were at all relevant times the owners of personal property confiscated and destroyed by Defendant as alleged above.  Plaintiffs remain entitled to the possession of their personal property.

106. Defendant intentionally exercised control or dominion over Plaintiffs' property that seriously interfered with Plaintiffs' right of possession.  Specifically, Defendant confiscated Plaintiffs' property and thereby caused Plaintiffs to be deprived of their possession, appropriated the property, and destroyed the property.

107. The personal property confiscated and destroyed by Defendant included tents, blankets, clothing, personal items, prescription medications, and documents, all of which were particularly valuable to Plaintiffs because the belongings amounted to most, if not all of the

Complaint- 14

**Northwest Justice Project**
**1702 W. Broadway Avenue**
**Spokane, WA 99201**
**(509) 324-9128 phone**
**(509) 324-0065 fax**

relatively few possessions that Plaintiffs owned.

108. Plaintiffs made a Claim for Damages with the City of Spokane on February 26, 2019. Those claims were denied.

## VI. RELIEF REQUESTED

Plaintiffs request the following relief:

a. To issues a declaratory judgment that Defendant's practices and conduct alleged herein were, or are, in violation of Plaintiffs' rights under the United States Constitution;

b. To award Plaintiffs' compensatory and punitive damages from Defendant in amounts to be determined at trial, plus interest from the date of the judgment on their First Claim for Relief;

c. To award Plaintiffs' compensatory and punitive damages from Defendant in amounts to be determined at trial, plus interest from the date of the judgment on their Second Claim from Relief;

d. To award Plaintiffs' compensatory and punitive damages from Defendant in amounts to be determined at trial, plus interest from the date of the judgment on their Third Claim from Relief;

e. To award Plaintiffs their costs and attorney fees pursuant to 42 USC § 1988; and

f. To grant such other relief as is just and appropriate.

Respectfully submitted this 11th day of July 2019.

NORTHWEST JUSTICE PROJECT

*/s/ E. Jose Trejo*
E. Jose Trejo, WSBA # 28694
JoseT@nwjustice.org
Attorney for Plaintiffs

Complaint- 15

**Northwest Justice Project**
1702 W. Broadway Avenue
Spokane, WA 99201
(509) 324-9128 phone
(509) 324-0065 fax